PEOPLE v HAWTHORNE

Docket No. 250144. Submitted October 5, 2004, at Detroit. Decided
  January 27, 2005, at 9:00 a.m. Leave to appeal sought.
  Frank J. Hawthorne was convicted by a jury in the Wayne Circuit
    Court, Michael M. Hathaway, J., of second-degree murder and
    possession of a firearm during the commission of a felony in
    connection with a shooting death. The defendant, who claimed
    that the shooting was accidental, had requested that the jury be
    instructed on CJI2d 7.1, the jury instruction on accident as a
    defense to murder, and on voluntary manslaughter as a lesser
    included offense. The court had refused the requested instruc-
    tions. The defendant appealed.
      The Court of Appeals held:
      1. The trial court erred by failing to give an instruction on
    accident because accident is a defense to murder, even if a
    defendant's actions amount to criminal negligence, and there was
    evidence to support the defendant's theory that the shooting was
    accidental. The error requires reversal under the precedent of
    People v Lester, 406 Mich 252 (1979), and People v Jones, 395 Mich
    379 (1975), because whether the shooting was intentional or
    accidental was a central issue. The Michigan Supreme Court
    should examine the continued viability of Lester and Jones,
    however, in light of its decision in People v Lukity, 460 Mich 750
    (1999). Had it been free to apply the test set forth in Lukity, the
    Court of Appeals would have concluded in this case that reversal
    was not required because the defendant could not demonstrate
    that it is more probable than not that the trial court's failure to
    give the instruction was outcome determinative.
      2. The trial court did not err in refusing to give a jury
    instruction on voluntary manslaughter because a rational view of
    the evidence did not support a voluntary manslaughter conviction.
      Reversed and remanded.

*Michael A. Cox*, Attorney General, *Thomas L. Casey*,
Solicitor General, *Kym L. Worthy*, Prosecuting Attor-
ney, *Timothy A. Baughman*, Chief of Research, Train-

ing, and Appeals, and *Olga Agnello*, Principal Attorney, Appeals, for the people.

State Appellate Defender (by *Jacqueline J. McCann*) for the defendant on appeal.

Before: KELLY, P.J., and GAGE and ZAHRA, JJ.

ZAHRA, J. Defendant appeals as of right from his jury trial convictions of second-degree murder, MCL 750.317, and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, arising from the shooting death of Dennis Jeffries. The trial court sentenced defendant to consecutive terms of nineteen to thirty years' imprisonment for his second-degree murder conviction and five years' imprisonment for his felony-firearm conviction.

At trial, defendant argued that he was not guilty of murder because his shooting of Jeffries was an accident. The trial court refused to give CJI2d 7.1, the standard jury instruction for accident as a defense to murder, concluding that defendant was not entitled to such an instruction because defendant's actions at the time of the shooting amounted to, at a minimum, criminal negligence. The issue presented on appeal is whether the trial court erred by refusing defendant's request for CJI2d 7.1 and, if so, whether this error requires reversal. We hold that the trial court erred by refusing to give CJI2d 7.1, because accident is a defense to murder even if the defendant's actions amount to criminal negligence. We are bound by Supreme Court precedent holding that a trial court's failure to give an instruction on accident requires reversal when that defense is a central issue in the case. We therefore reverse defendant's convictions and remand for a new trial.

Although we are bound by existing Supreme Court precedent and must therefore reverse defendant's con-

victions, we urge our Supreme Court to review the continued viability of these decisions in light of *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999), in which the Court held that, in the case of preserved, nonconstitutional error, the defendant has the burden of establishing a miscarriage of justice under a "more probable than not" standard. Were we free to apply *Lukity* without regard to prior decisions of the Supreme Court that suggest that the instructional error that occurred in this case requires reversal, we would conclude that defendant did not establish a miscarriage of justice and affirm his convictions.

### I. FACTS AND PROCEDURE

On the evening of October 18, 2002, defendant and Jeffries met at an illegal gambling house and got into an argument over a $5 bet. When the argument escalated, defendant walked out of the room and returned with an automatic handgun. Two men tried unsuccessfully to disarm defendant. Everyone present in the house then ran for the exits, except for Vance Claxton, who watched the encounter by peering around a wall. Jeffries said to defendant, "What you going to do with the gun? We supposed to be family. We supposed to be better than that. What, you going to shoot me?" Jeffries then challenged defendant to a fight. When defendant pressed the barrel of the gun into Jeffries's chest, Jeffries grabbed defendant's wrist and pushed him against the wall. Claxton saw defendant and Jeffries standing face-to-face and speaking while Jeffries held defendant's wrist and they waved the gun around, pointing it in different directions. Defendant was trying to push the gun toward Jeffries, and Jeffries was trying to push the gun away. Claxton then looked away, and approximately two seconds later he heard a gunshot and saw Jeffries fall to the ground.

About ten seconds after the shot, Claxton heard defendant say, "Man, I'm sorry. You know I didn't shoot you. The gun was on safety. I'm sorry." Defendant found Claxton hiding in the bedroom and told him, "I shot Dennis by accident. Come apply pressure to his chest." Defendant told Claxton to call 911. With defendant's help, Claxton put Jeffries in a car. Claxton then drove Jeffries to the hospital. More than a month later, Jeffries died from complications arising from the gunshot wound.

## II. ANALYSIS

### A. STANDARDS OF REVIEW

This Court generally reviews claims of instructional error de novo. *People v Fennell*, 260 Mich App 261, 264; 677 NW2d 66 (2004). "This Court also reviews de novo the constitutional question whether a defendant was denied her constitutional right to present a defense." *People v Kurr*, 253 Mich App 317, 327; 654 NW2d 651 (2002). But a trial court's determination whether a jury instruction is applicable to the facts of the case is reviewed for an abuse of discretion. *People v McKinney*, 258 Mich App 157, 163; 670 NW2d 254 (2003).

### B. INSTRUCTION ON ACCIDENT

Defendant argues that the trial court erred by denying defendant's request for CJI2d 7.1, the standard jury instruction on accident as a defense to murder.[1]

---

[1] CJI2d 7.1 provides:

(1) The defendant says that [he / she] is not guilty of _____ because _____'s death was accidental. That is, the defendant says that _____ died because [*describe outside force; e.g., "the gun went off as it hit the wall"*].

It is the function of the trial court to clearly present the case to the jurors and instruct them on the applicable law. Jury instructions must therefore include all the elements of the charged offenses and any material issues, defenses, and theories that are supported by the evidence. Even if the instructions are somewhat imperfect, reversal is not required if the instructions fairly presented the issues to be tried and were sufficient to protect the rights of the defendant. [*Fennell, supra* at 265.]

"When a defendant requests a jury instruction on a theory or defense that is supported by the evidence, the trial court must give the instruction." *People v Riddle*, 467 Mich 116, 124; 649 NW2d 30 (2002).

Here, the trial court relied on *People v Hess*, 214 Mich App 33; 543 NW2d 332 (1995), and *People v Morrin*, 31 Mich App 301; 187 NW2d 434 (1971), in concluding that defendant was not entitled to an instruction on accident because he was criminally negligent. In *Morrin, supra* at 310, this Court stated that "[h]omicide is 'excusable' if the death is the result of an accident and the actor was not criminally negligent", which this Court quoted in *Hess, supra* at 38. However, neither *Morrin* nor *Hess* precludes a defendant from receiving an instruction on accident as a defense to murder if there is evidence that the defendant's actions were criminally negligent. *Morrin* and *Hess* merely explained that, for a defendant to be *completely* excused from killing a person (i.e., to be acquitted of all charges of murder, manslaughter, and careless, reckless, or negligent discharge of a firearm causing death, etc.), the death must be the result of an accident, and the defendant cannot have acted with criminal negligence. *Hess, supra* at 39, held that acci-

---

(2) If the defendant did not mean to [pull the trigger / (*state other action*)] then [he / she] is not guilty of murder. The prosecutor must prove beyond a reasonable doubt that the defendant meant to _____.

dent is not a defense to involuntary manslaughter, because involuntary manslaughter is not an intent crime and accident is subsumed within that offense. Thus, a defendant is only excused from involuntary manslaughter if he did not act with criminal negligence.[2] But the defendant need not be free of criminal negligence to be excused from a homicide charge that includes intent as one of its elements, such as murder. Accident is a viable defense to murder even if the defendant acted with criminal negligence. Neither *Morrin* nor *Hess* held that a defendant cannot be excused from murder if the death was an accident but was the result of the defendant's criminal negligence.

The prosecution does not dispute that an instruction on accident is applicable even when the defendant acted with criminal negligence. Rather, the prosecution argues that the evidence in this case did not support a finding that the shooting was accidental. Although the trial court refused to give CJI2d 7.1, it conceded that "there may not have been an intent to pull the trigger. The pulling of the trigger may have been an accident . . . ." This factual finding by the trial court supports defendant's claim that CJI2d 7.1 should have been given.

We agree with the trial court that there is evidence to support defendant's theory that the shooting was an accident. Defendant and Jeffries were struggling for control of the gun when it discharged. After Jeffries was shot, defendant made statements indicating that he was sorry and that he had fired the gun accidentally. He also helped get medical attention for Jeffries. "[W]hen . . . the defense theory is accidental homicide, the defense

---

[2] If a homicide is committed with gross negligence or an intent to injure, but not malice, it is not murder, but is involuntary manslaughter. *People v Holtschlag*, 471 Mich 1, 21-22; 684 NW2d 730 (2004).

requests an instruction on the theory, and there is evidence to support the theory, the trial court must properly instruct the jury on the defense theory." *People v Lester*, 406 Mich 252, 254-255; 277 NW2d 633 (1979) (*Lester II*). Here, defendant's theory was that the shooting was an accident, there was evidence to support this theory, and defendant requested a jury instruction on accident. Therefore, the trial court erred by denying defendant's request for such an instruction.[3]

The prosecution argues that any instructional error committed by the trial court was harmless because, by convicting defendant of second-degree murder, the jury necessarily found that defendant acted with malice, obviating the possibility that it could have found that the shooting was an accident. While the prosecution's argument is logical, our Supreme Court rejected the notion that the trial court's proper instruction of the jury regarding the intent element of murder renders harmless the court's failure to give an instruction on accident. In *People v Lester*, 78 Mich App 21, 35-37; 259

---

[3] Defendant maintains that the trial court's instructional error infringed on his due process right to present a defense. Const 1963, art 1, § 13; US Const, Ams VI and XIV; *People v Hayes*, 421 Mich 271, 278; 364 NW2d 635 (1984). While an instruction on accident would have specifically explained defendant's main theory of defense, the absence of the instruction did not prevent defendant from arguing and presenting his theory of accident to the jury. Defendant was allowed to present evidence that the shooting was an accident and to argue that he did not have the intent to commit murder because the shooting was accidental. The jury was given the standard jury instructions listing the elements of first- and second-degree murder, which explained that intent is required for murder. Because defendant was allowed to present his defense of accident to the jury and the trial court properly informed the jury about the intent required for a murder conviction, we conclude that the trial court's instructional error did not deprive defendant of his due process right to present a defense. Thus, the trial court's instructional error is nonconstitutional in nature. This conclusion is critical to review whether the instructional error requires reversal under *Lukity*.

NW2d 370 (1977) (*Lester I*), this Court held that the trial court's refusal to give an instruction on accident did not require reversal of the defendant's first-degree murder conviction because the trial court's instructions "in essence" embodied the requested instruction on accident, as the instructions clearly informed the jury that the burden of proof rested with the prosecution to show that the killing was intentional or that it was due to reckless disregard for the safety of others. Our Supreme Court reversed, holding as follows: "While the trial court's instruction with regard to the burden of proof and the requisite intent were correct, we hold that a proper instruction on the defense theory of accidental homicide should also have been given." *Lester II, supra* at 253. Additionally, in *People v Ora Jones*, 395 Mich 379, 394; 236 NW2d 461 (1975), overruled on other grounds in *People v Cornell*, 466 Mich 335, 357-358; 646 NW2d 127 (2002), the Court used similar reasoning: "The court did not instruct the jury that if the jury found the shooting was accidental it should find the defendant not guilty. While a logician or one skilled in the law could have gleaned such a rule from the instructions given, we are not satisfied that the instructions fairly and fully presented the case to the jury in an understandable manner."

Both this Court and our Supreme Court have held that a trial court's failure to give an instruction on accident is error requiring reversal when accident was a central issue in the case. See *Lester II, supra* at 253-255 (in which our Supreme Court reversed the defendants' first-degree murder convictions because the defendants' theory at trial was that the gun discharged accidentally, there was evidence to support this theory, and the trial court denied the defendants' request to give an instruction on accident); *Ora Jones, supra* at 394 (in which our Supreme Court explained that be-

cause whether the shooting was intentional or accidental was the central issue in the case, the trial court erred in failing to sua sponte specifically instruct the jury that, if it found the shooting was accidental, it should find the defendant not guilty of murder);[4] *People v Glover*, 154 Mich App 22, 30, 35-40; 397 NW2d 199 (1986) (in which this Court reversed the defendant's voluntary manslaughter conviction because the trial court failed to sua sponte give the jury an instruction on accident and the defendant emphasized that theory at trial, even though the trial court properly instructed the jury on first- and second-degree murder, voluntary and involuntary manslaughter, and careless and negligent use of a firearm resulting in death); *People v Newman*, 107 Mich App 535, 537; 309 NW2d 657 (1981) ("where the theory of accidental homicide is central in the defendant's trial, even where the defendant failed to request an instruction on that defense, it is error requiring reversal for the trial court to fail to adequately instruct the jury on the defense so as to focus

---

[4] Our Supreme Court's decision in *Ora Jones, supra* at 394, that the trial court erred in failing to adequately instruct the jury that accidental homicide does not amount to murder was not necessary to the resolution of the case. However, " ' " [w]hen a court of last resort intentionally takes up, discusses and decides a question *germane* to, though not necessarily decisive of, the controversy, such decision is not a *dictum* but is a judicial act of the court which it will thereafter recognize as a binding decision." ' " *People v Higuera*, 244 Mich App 429, 437; 625 NW2d 444 (2001), quoting *Detroit v Michigan Pub Utilities Comm*, 288 Mich 267, 299-300; 286 NW 368 (1939), quoting *Chase v American Cartage Co, Inc*, 176 Wis 235, 238; 186 NW 598 (1922). A decision of our Supreme Court "is authoritative with regard to any point decided if the Court's opinion demonstrates 'application of the judicial mind to the precise question adjudged, regardless of whether it was necessary to decide the question to decide the case.' " *Higuera, supra* at 437, quoting *People v Bonoite*, 112 Mich App 167, 171; 315 NW2d 884 (1982). Because the *Ora Jones* Court intentionally discussed and decided the germane question of whether the trial court adequately instructed the jury that accident is a defense to murder, we are bound by that decision.

the jury's attention on that central issue"); and *People v Stanley Jones*, 69 Mich App 459, 460-462; 245 NW2d 91 (1976) (in which this Court reversed the defendant's first-degree murder conviction because a central issue at trial was whether the killing was an accident, and, although the jury instructions touched directly on the defense theory of accident and the defendant did not object to the instructions, the trial court failed to voluntarily and clearly direct the jury's attention to the accident issue). Thus, we must reverse defendant's convictions if the defense of accident was a central issue in this case.

At trial, defense counsel's main argument was that, because the shooting was accidental, defendant should be convicted of involuntary manslaughter, but not murder. The facts of this case are consistent with the long line of Michigan cases cited that have found accident to be a central issue in the case. We therefore conclude that whether the shooting was intentional or accidental was a central issue in this case. The trial court's failure to charge the jury with CJI2d 7.1 is therefore error requiring reversal of defendant's convictions. *Lester II, supra*; *Ora Jones, supra*.

However, we urge our Supreme Court to examine the continued viability of *Lester II* and *Ora Jones* and their progeny in light of *Lukity* and *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). Since *Lester II* and *Ora Jones* and their progeny were decided, our Supreme Court has set forth specific criteria that must be established before trial court error requires reversal. See *Carines, supra* at 774. In *Lukity, supra* at 494, our Supreme Court held that, to justify the reversal of a conviction in the case of preserved, nonconstitutional error, the defendant has the burden of establishing that the error asserted resulted in a miscarriage of justice

under a "more probable than not" standard.[5] We conclude that application of *Lukity* to the present case would result in a different outcome than that reached in *Lester II* and *Ora Jones* and their progeny. In those pre-*Lukity* decisions, the courts did not place the burden on the defendants to establish that the errors required reversal. We conclude that the facts presented in this case fail to establish error requiring reversal under the *Lukity* standard. The jury instructions explaining the intent element of murder made it clear that a finding of accident would be inconsistent with a finding that defendant possessed the intent required for murder. Accordingly, were we not bound by *Lester II* and *Ora Jones*, we would conclude that defendant cannot demonstrate that it is more probable than not that the trial court's failure to give the instruction on accident was outcome determinative. *Lukity, supra* at 496.

### C. INSTRUCTION ON VOLUNTARY MANSLAUGHTER

Defendant also argues that the trial court erred by denying his request for a jury instruction on the lesser included offense of voluntary manslaughter.[6] "A criminal defendant is entitled to have a properly instructed jury consider the evidence against him." *Riddle, supra* at 124.[7]

---

[5] In settling on this standard, the Court overruled its earlier determination in *People v Gearns*, 457 Mich 170, 173, 203-205; 577 NW2d 422 (1998), that, in a case of preserved, nonconstitutional error, the prosecution must demonstrate that it is highly probable that the error did not contribute to the verdict. *Lukity, supra* at 492-494.

[6] Although we reverse defendant's convictions on the basis of his argument concerning the instruction on accident, we address this issue because it is likely to arise again on retrial.

[7] Although defendant's request for an instruction on voluntary manslaughter is inconsistent with his defense that the homicide was an accident, a defendant may advance inconsistent defenses. MCR 2.111(A)(2).

> [B]oth forms of manslaughter are necessarily included lesser offenses of murder. Because voluntary and involuntary manslaughter are necessarily included lesser offenses, they are also "inferior" offenses within the scope of MCL 768.32. Consequently, when a defendant is charged with murder, an instruction for voluntary and involuntary manslaughter must be given if supported by a rational view of the evidence. [*People v Mendoza*, 468 Mich 527, 541; 664 NW2d 685 (2003), citing *Cornell, supra.*]

"Manslaughter is murder without malice." *Mendoza, supra* at 534. "[T]o show voluntary manslaughter, one must show that the defendant killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Id.* at 535. Provocation is the circumstance that negates the presence of malice. *Id.* at 536. "The provocation necessary to mitigate a homicide from murder to manslaughter is that which causes the defendant to act out of passion rather than reason. . . . [T]he provocation must be adequate, namely, that which would cause a reasonable person to lose control." *People v Sullivan*, 231 Mich App 510, 518; 586 NW2d 578 (1998), aff'd 461 Mich 992 (2000) (emphasis omitted).

We conclude that the trial court did not abuse its discretion by determining that a rational view of the evidence did not support an instruction on voluntary manslaughter. The disagreement originated over a $5 bet. Defendant was the person responsible for escalating the argument, as well as the person who retrieved a gun. Although Jeffries challenged defendant to a fight, this action was a last-resort attempt to turn the situation from a deadly one into a mere fistfight. Rather than agreeing to a fistfight, defendant reacted by escalating the conflict again by pointing the gun at Jeffries's chest. The gun discharged when Jeffries grabbed defendant's wrist and the two fought over control of the gun. There

is no evidence that Jeffries provoked defendant to such an extent that a reasonable person would lose control. In fact, it appears from the evidence that defendant was the provocateur. Therefore, the trial court did not abuse its discretion by determining that a rational view of the evidence did not support a voluntary manslaughter conviction.

Reversed and remanded. We do not retain jurisdiction.