*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

PATRICK TERRELL SANFORD,

Defendant-Appellant.

UNPUBLISHED
March 16, 2026
10:16 AM

No. 374226
Macomb Circuit Court
LC No. 2024-000429-FH

Before: PATEL, P.J., and SWARTZLE and MARIANI, JJ.

PER CURIAM.

Defendant appeals as of right his jury-trial convictions of carrying a concealed weapon, MCL 750.227; possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b; and possession of body armor by a felon, MCL 750.227g(9)(a).[1]  Defendant was sentenced as a second-offense habitual offender, MCL 769.10, to three months' probation for the carrying a concealed weapon conviction, two years' imprisonment for the felony-firearm conviction, and six days' jail and three months' probation for the possession of body armor by a felon conviction.  We affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case arose from a traffic stop conducted after defendant was observed driving a Jeep Cherokee at night without the headlights turned on.  Officer Benjamin Rzotkiewicz of the Fraser Police Department (FPD) initiated the traffic stop.  Defendant informed Rzotkiewicz that the Jeep was a rental, and he was unfamiliar with the controls.  Rzotkiewicz verified that defendant's drivers' license was valid, helped defendant turn on the headlights, and gave defendant permission to leave.

---

[1] Defendant was also charged with one count of receiving stolen property, MCL 750.535(7).  Defendant moved for a directed verdict at trial, and the trial court granted defendant's motion with respect to the charge of receiving stolen property.

After defendant drove away, Rzotkiewicz received information that the Jeep was reported as stolen. Rzotkiewicz initiated a second stop. Defendant was arrested for possession of stolen property. The following items were recovered from the vehicle: (1) a loaded handgun from the center console, (2) soft body armor from the trunk, (3) pepper spray, and (4) a spring-assisted knife. During questioning at the police station, defendant stated that his wife, Ebony Sanford, owned the gun and claimed that he was unaware that there was a gun in the vehicle. Defendant was charged as noted.

On the first day of trial, defendant moved to replace his attorney on the basis of ineffective assistance. Defendant claimed that defense counsel failed to discuss the case with him or provide discovery materials to him. Defendant also maintained that he was forced to proceed to trial. Defense counsel denied defendant's claims. The trial court denied defendant's request, noting that defendant had never raised an issue concerning his attorney in any of his prior appearances on the matter and had requested the trial date.

During trial, Rzotkiewicz testified that the gun recovered from the vehicle was not registered to defendant's wife. Defendant testified that he worked as an unarmed security guard for a marijuana dispensary. Defendant admitted that he purchased the body armor and that he knew it was in the vehicle. Defendant claimed that he was unaware that his prior conviction of armed robbery precluded him from possessing body armor. However, defendant admitted that his ignorance of the law was not a defense to the charge. Defendant also maintained that he was unaware that the Jeep was stolen or that a gun was in the center console. Defendant admitted that he knew his wife had a concealed pistol license and owned a gun, and he claimed that his wife owned the gun that was recovered from the vehicle. Defendant was found guilty and sentenced as delineated above. This appeal followed.

## II. DESTRUCTION OF EVIDENCE

Defendant argues that the destruction of the recording of his booking and conversation with Rzotkiewicz violated his due-process rights. We disagree.

Although defendant elicited testimony concerning the destruction of the recordings, he did not raise the issue before the trial court. Accordingly, this issue is unpreserved, and our review is for plain error affecting substantial rights. See *People v Dickinson*, 321 Mich App 1, 15; 909 NW2d 24 (2017). To avoid forfeiture under the plain-error rule, a defendant must show that an error occurred, that it was clear or obvious, and that it was prejudicial, i.e., that it affected the outcome of the trial court proceedings. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *Id*. at 763-764 (cleaned up).

In *Brady v Maryland*, 373 US 83, 87; 83 S Ct 1194; 10 L Ed 2d 215 (1963), the United States Supreme Court held, "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." "To warrant reversal on a claimed due-process violation involving the failure to preserve evidence, a defendant must prove that the

missing evidence was exculpatory or that law enforcement personnel acted in bad faith." *Dickinson*, 321 Mich App at 16 (cleaned up). "When the evidence is only 'potentially useful,' a failure to preserve the evidence does not amount to a due-process violation unless a defendant establishes bad faith." *Id.*, quoting *Arizona v Youngblood*, 488 US 51, 58; 109 S Ct 333; 102 L Ed 2d 281 (1988).

"Defendant bears the burden of showing that the evidence was exculpatory or that the police acted in bad faith." *People v Johnson*, 197 Mich App 362, 365; 494 NW2d 873 (1992). "If the defendant cannot show bad faith or that the evidence was potentially exculpatory, the state's failure to preserve evidence does not deny the defendant due process." *People v Heft*, 299 Mich App 69, 79; 829 NW2d 266 (2012). To demonstrate evidence is exculpatory, "[t]he defendant must show that the evidence might have exonerated him or her." *Id*.

Defendant claims that the recording of his booking and conversation with Rzotkiewicz would have established that he was unaware that the gun was in the Jeep.[2] Knowledge of the gun is an integral element for the carrying a concealed weapon[3] and felony-firearm convictions.[4] Defendant testified at trial that he was unaware that the gun was in the Jeep. In addition, the dashboard camera recording was played for the jury. Defendant could be heard in the recording asserting his lack of knowledge about the gun. The recording of defendant's booking and conversation with Rzotkiewicz would have conveyed the same information—defendant denied any knowledge of the gun in the vehicle.

Defendant's position on appeal also contradicts the testimony at trial. Defendant claims the recording contained defendant's statements about his lack of knowledge of the gun. However, defendant testified he was never asked by the officers whether he was aware of the gun in the center console. If defendant was never asked about his knowledge of the gun, then the video recording of his conversation with Rzotkiewicz would not contain exculpatory evidence. Defendant claims the recording also contained his statement regarding his belief that his wife left the gun in the Jeep. However, Rzotkiewicz testified that the gun recovered from the Jeep was not registered to defendant's wife. Defendant failed to demonstrate that the evidence would have exonerated him.

Defendant also cannot establish the recording was destroyed in bad faith. Rzotkiewicz testified the recordings at the FPD were automatically overwritten every seven days as a matter of

---

[2] It is unclear which conviction defendant is challenging. Because defendant pleaded guilty to possessing body armor as a felon during trial, the only convictions that defendant could challenge would be his carrying a concealed weapon and felony-firearm convictions.

[3] "To support a conviction of carrying a weapon in [a vehicle], the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was carrying it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (cleaned up).

[4] "The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

policy. Routine erasure of police recordings does not constitute bad faith when the purpose of the erasure was not to destroy evidence in anticipation of a trial. See *Johnson*, 197 Mich App at 365 ("Similarly, the routine destruction of taped police broadcasts, where the purpose is not to destroy evidence for a forthcoming trial, does not mandate reversal."). Defendant failed to establish that an error occurred.

## III. CHOICE OF COUNSEL

Defendant claims his right to choice of counsel was violated. We disagree.

"We review for an abuse of discretion a trial court's exercise of discretion affecting a defendant's right to counsel of choice." *People v Akins*, 259 Mich App 545, 556-557; 675 NW2d 863 (2003) (cleaned up). "An abuse of discretion occurs when a trial court's decision 'falls outside the range of reasonable and principled outcomes.' " *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017), quoting *People v Duncan*, 494 Mich 713, 723; 835 NW2d 399 (2013).

Defendant claims that he was denied his right to counsel of his choice. "A defendant's right under the Michigan Constitution is the same as that guaranteed by the Sixth Amendment." *People v Aceval*, 282 Mich App 379, 386; 764 NW2d 285 (2009). "This guaranteed right encompasses a defendant's right to effective assistance of counsel, the right to self-representation, the right of indigent defendants to have appointed counsel in felony prosecutions, and the right to choice of counsel, which is at issue in this case." *Id*. (citations omitted). "However, this right to choice of counsel is limited and may not extend to a defendant under certain circumstances." *Id*. A trial court has "wide latitude in balancing the right to counsel of choice against the needs of fairness, and against the demands of its calendar." *United States v Gonzalez-Lopez*, 548 US 140, 152; 126 S Ct 2557; 165 L Ed 2d 409 (2006) (citations omitted). "A balancing of the accused's right to counsel of his choice and the public's interest in the prompt and efficient administration of justice is done in order to determine whether an accused's right to choose counsel has been violated." *People v Krysztopaniec*, 170 Mich App 588, 598; 429 NW2d 828 (1988).

Defendant claims defense counsel: (1) removed himself from the case; (2) coerced defendant to proceed to trial; and (3) only appeared for the hearings but provided no information to defendant about the case. Defendant retained his counsel in December 2023 and had nine pretrial conferences after his felony arraignment but never raised any concerns regarding defense counsel until the first day of trial, which was the date of his choosing. The trial court had wide latitude in balancing a defendant's right to counsel of choice with its calendar and fairness. *Gonzalez-Lopez*, 548 US at 152. The trial court's decision did not fall outside the range of reasonable and principled outcomes.

## IV. JUDICIAL MISCONDUCT

Defendant claims the trial judge engaged in judicial misconduct requiring reversal because the judge provided the prosecutor assistance in rewording a question to survive defendant's objection. We disagree.

Defendant never objected to the trial judge's comments on the basis of judicial misconduct. Accordingly, this issue is unpreserved, see *People v Sardy*, 216 Mich App 111, 117-118; 549

-4-

NW2d 23 (1996), and our review is for plain error affecting defendant's substantial rights, *Carines*, 460 Mich at 763.

"Judicial misconduct may come in myriad forms, including belittling of counsel, inappropriate questioning of witnesses, providing improper strategic advice to a particular side, biased commentary in front of the jury, or a variety of other inappropriate actions." *Stevens*, 498 Mich at 172-173. "A criminal defendant is entitled to a neutral and detached magistrate." *People v Jackson*, 292 Mich App 583, 597-598; 808 NW2d 541 (2011) (cleaned up). "A defendant claiming judicial bias must overcome a heavy presumption of judicial impartiality." *Id*. at 598.

In *Stevens*, our Supreme Court established the framework for analyzing a claim of judicial impartiality, holding:

> A trial judge's conduct deprives a party of a fair trial if the conduct pierces the veil of judicial impartiality. A judge's conduct pierces this veil and violates the constitutional guarantee of a fair trial when, considering the totality of the circumstances, it is reasonably likely that the judge's conduct improperly influenced the jury by creating the appearance of advocacy or partiality against a party. In evaluating the totality of the circumstances, the reviewing court should inquire into a variety of factors including, but not limited to, the nature of the trial judge's conduct, the tone and demeanor of the judge, the scope of the judicial conduct in the context of the length and complexity of the trial and issues therein, the extent to which the judge's conduct was directed at one side more than the other, and the presence of any curative instructions, either at the time of an inappropriate occurrence or at the end of trial. [*Stevens*, 498 Mich at 164.]

This inquiry is fact specific. *Id*. at 171. "A single inappropriate act does not necessarily give the appearance of advocacy or partiality, but a single instance of misconduct may be so egregious that it pierces the veil of impartiality." *Id*. A reviewing court should evaluate the cumulative effect of the errors. *Id*. at 171-172.

Defendant claims the trial judge exhibited judicial partiality by aiding the prosecutor in wording a question to Rzotkiewicz. A review of the exchange establishes the trial judge instructed the prosecutor how to ask the question to survive the objection. After hearing the parties' arguments, the trial judge instructed the prosecutor to ask nonleading questions, suggesting the prosecutor ask Rzotkiewicz about defendant's reactions to the questions. Even if the trial judge's instruction favored the prosecution, defendant fails to establish the trial court pierced the veil of judicial impartiality. The trial judge assisted the prosecutor in specifying the question to Rzotkiewicz, but Rzotkiewicz's answer did not have significant probative value. Rzotkiewicz testified defendant did not have a particular reaction to the questions about the gun.

Additionally, a review of the record demonstrates that the trial judge did not routinely find in favor of the prosecution. The trial judge sustained many of defendant's objections during trial. Defendant claims the trial judge's one instance of alleged inappropriate conduct stood out because the trial judge denied defendant's request to replace defense counsel. Defendant provides no authority to support his position and, as discussed, the trial judge did not err by declining to adjourn trial for defendant to retain another attorney. Further, defendant fails to explain how the trial

judge's decision regarding his choice of attorney impacted the fairness of his trial given that the issue was resolved before a jury was impaneled.

Jury instructions are another element to consider when determining whether a trial judge pierced the veil of impartiality. *Id*. at 164. The trial judge instructed the jury to ignore his comments, instructions, and any opinions that may have been expressed. Jurors are presumed to follow their instructions. *People v Unger (On Remand)*, 278 Mich App 210, 237; 749 NW2d 272 (2008).

Defendant has not established the trial judge's action was "so egregious that it pierce[d] the veil of impartiality." *Stevens*, 498 Mich at 171.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims his defense counsel was ineffective for: (1) breaching attorney-client privilege, (2) failing to present a defense, and (3) failing to raise objections to preserve issues for appellate review. We disagree.

An ineffective-assistance-of-counsel claim presents a "mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). We review de novo constitutional questions, while we review the trial court's findings of fact, if any, for clear error. *Id*. When, as in this case, defendant has not moved for a new trial or a *Ginther*[5] evidentiary hearing in the trial court, *Heft*, 299 Mich App at 80, or moved in this Court to remand for a *Ginther* hearing, *People v Abcumby-Blair*, 335 Mich App 210, 227; 966 NW2d 437 (2020), our review is limited to errors apparent on the record, *Abcumby-Blair*, 335 Mich App at 227.

The United States and Michigan Constitutions afford criminal defendants the right to effective assistance of counsel. *Yeager*, 511 Mich at 488, citing Const 1963, art 1, § 20; US Const Am VI; *Strickland v Washington*, 466 US 668; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To prevail on a claim of ineffective assistance, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that [the] outcome would have been different." *Yeager*, 511 Mich at 488 (cleaned up). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (cleaned up). "Effective assistance of counsel is presumed, and the defendant bears a heavy burden of proving otherwise." *People v Head*, 323 Mich App 526, 539; 917 NW2d 752 (2018) (cleaned up).

## A. ATTORNEY-CLIENT PRIVILEGE

Defendant argues that defense counsel breached attorney-client privilege by informing the trial court (1) defendant did not want to proceed to trial and (2) the case was uncomplicated. Defendant asserts that defense counsel's statements demonstrated a disinterest in advocating on defendant's behalf and expressed a belief defendant was guilty.

---

[5] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

"[T]he attorney-client privilege is intended to protect both sides of the two-way street of information exchange between the attorney and client." *People v Joly*, 336 Mich App 388, 397; 970 NW2d 426 (2021). "The purpose of the privilege is to enable a client to confide in an attorney, secure in the knowledge that the communication will not be disclosed." *People v Johnson*, 203 Mich App 579, 585; 513 NW2d 824 (1994).

Defense counsel's comment regarding defendant's intention to not proceed to trial did not violate attorney-client privilege. Before defense counsel informed the trial court that defendant did not want to proceed to trial, defendant disclosed he did not want to proceed to trial. Defendant stated he felt forced to go to trial. Defense counsel did not disclose anything to the trial court and merely repeated defendant's statement.

Defendant claims that defense counsel expressing his belief this case was uncomplicated breached attorney-client privilege and constituted an admission defendant was guilty. Defendant fails to provide an argument to support his position or explain how the comment constituted an admission of defendant's guilt. Defendant must establish the factual predicate for his claim of ineffective assistance. *People v Putman*, 309 Mich App 240, 248; 870 NW2d 593 (2015). Defendant has failed to establish that defense counsel's performance was deficient.

## B. PRESENT A DEFENSE

Defendant also argues that defense counsel failed to present a defense. "Decisions regarding what evidence to present and whether to call or question witnesses are presumed to be matters of trial strategy, and this Court will not substitute its judgment for that of counsel regarding matters of trial strategy." *People v Davis*, 250 Mich App 357, 368; 649 NW2d 94 (2002). "Defense counsel is given wide discretion in matters of trial strategy because many calculated risks may be necessary in order to win difficult cases." *People v Odom*, 276 Mich App 407, 415; 740 NW2d 557 (2007). "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Carll*, 322 Mich App 690, 702; 915 NW2d 387 (2018) (cleaned up).

Because defense counsel allegedly did not disclose a trial strategy to defendant, defendant contends that defense counsel did not have a trial strategy. On appeal, defendant states his position has always been that he knew the body armor was in the vehicle but did not know about the gun. The record reflects that defense counsel proceeded with the same understanding of the case as defendant. During trial, defense counsel asked defendant if he was aware of the gun in the center console of the Jeep. Defendant testified that he had no knowledge that the gun was in the Jeep. Defense counsel asked questions establishing that Ebony retrieved the Jeep from defendant's friend and defendant had no reason to believe that there was anything illegal in the Jeep. Defendant also explained that he was never asked if he was aware of the gun in the Jeep during his police booking. Defendant has failed to establish that defense counsel's performance was deficient.

## C. OBJECTIONS

Defendant asserts that defense counsel was ineffective for failing to object to the trial court's assistance to the prosecution and failing to preserve defendant's constitutional right to counsel.

Defendant claims the trial court breached the veil of impartiality by assisting the prosecution in overcoming defendant's objection to a question. As discussed, the trial court's action, while favorable to the prosecution, did not pierce the veil of impartiality. Defense counsel raised numerous objections during trial, which the trial court sustained. Even if the trial court's assistance in that instance was improper, it did not amount to judicial misconduct because it was a single instance of favorability to the prosecution. Defense counsel was aware of the trial court's rulings before that moment and determined there was no basis to claim judicial partiality. We will not find trial counsel to be ineffective where an objection would have been meritless or futile, *Head*, 323 Mich App at 539, nor will we second-guess matters of trial strategy or "assess counsel's competence with the benefit of hindsight[,]"*Abcumby-Blair*, 335 Mich App at 237 (cleaned up). This Court has explained that failing to object may be a matter of trial strategy because "there are times when it is better not to object and draw attention to an improper comment." *Unger*, 278 Mich App at 242 (cleaned up).

With respect to defendant's claim concerning his right to choice of counsel, defendant raised the issue before trial and preserved it. Consequently, defense counsel was not ineffective.

## D. CUMULATIVE ERROR

Defendant claims the cumulative effect of defense counsel's errors warrants reversal of defendant's convictions. As discussed, defense counsel's performance was not deficient, and there were no errors warranting reversal. See *People v Dobek*, 274 Mich App 58, 106; 732 NW2d 546 (2007) ("The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal, but the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted.").

## VI. GREAT WEIGHT

Defendant argued that his convictions were against the great weight of the evidence.[6] We disagree.

Because defendant did not move for a new trial in the trial court, this issue is unpreserved. See *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003) ("Defendant failed to preserve this issue by not raising it in a motion for a new trial."). Accordingly, our review is for plain error affecting defendant's substantial rights. *Carines*, 460 Mich at 763.

"The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *People v Knepper*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 363191); slip op at 5 (cleaned up). "Generally, a verdict may be vacated only when the evidence does not reasonably support it and it was more likely the result of causes

---

[6] Defendant does not identify which convictions he is challenging. Since he pleaded guilty to possessing body armor as a felon during trial, the only convictions that he could challenge would be his convictions of felony-firearm and carrying a concealed weapon.

outside the record, such as passion, prejudice, sympathy, or some other extraneous influence." *People v Lacalamita*, 286 Mich App 467, 469; 780 NW2d 311 (2009). As our Supreme Court has explained, "absent exceptional circumstances, issues of witness credibility are for the jury, and the trial court may not substitute its view of the credibility for the constitutionally guaranteed jury determination thereof." *People v Lemmon*, 456 Mich 625, 642; 576 NW2d 129 (1998) (cleaned up). Therefore, when issues involving witness credibility arise, "if it cannot be said as a matter of law that the testimony thus impeached was deprived of all probative value or that the jury could not believe it, the credibility of witnesses is for the jury." *Id*. at 643 (cleaned up).

"To support a conviction for carrying a weapon in [a vehicle], the prosecution must show: (1) the presence of a weapon in a vehicle operated or occupied by the defendant, (2) that the defendant knew or was aware of its presence, and (3) that he was carrying it." *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999) (cleaned up). A defendant's knowledge of the weapon alone is insufficient to establish the carrying element. See *People v Butler*, 413 Mich 377, 384; 319 NW2d 540 (1982) ("The normal and ordinary meaning of [carry] requires something more than the potentially fortuitous intersection of presence and knowledge."). "[A] defendant carries a weapon when he exercises some element of intentional control or dominion over it." *Id*. at 390 n 11 (cleaned up). Factors to consider when determining whether a defendant was carrying a weapon in a vehicle include:

> (1) the accessibility or proximity of the weapon to the person of the defendant, (2) defendant's awareness that the weapon was in the motor vehicle, (3) defendant's possession of items that connect him to the weapon, such as ammunition, (4) defendant's ownership or operation of the vehicle, and (5) the length of time during which defendant drove or occupied the vehicle. [*Id*. (cleaned up).]

"The elements of felony-firearm are that the defendant possessed a firearm during the commission of, or the attempt to commit, a felony." *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999). "Possession may be actual or constructive and may be proved by circumstantial evidence." *People v Burgenmeyer*, 461 Mich 431, 437; 606 NW2d 645 (2000).

Defendant challenges the possession element of his firearm convictions, arguing he consistently testified he had no knowledge of the gun in the Jeep, which precluded the jury from inferring knowledge. Defendant also claimed the gun was Ebony's, but Rzotkiewicz testified the gun registered to Ebony was not the gun recovered from the Jeep. There was also testimony that the gun was recovered from the center console, which was in defendant's proximity and reach of the driver's seat. Although defendant was consistent in his denial of knowing about the gun, it was the jury's role to determine whether defendant's testimony was credible. See *Lacalamita*, 286 Mich App at 470 ("[T]he resolution of credibility questions is within the exclusive province of the jury.") We will not interfere with the jury's role.

Defendant fails to establish "the evidence preponderate[d] so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand." *Knepper*, ___ Mich App at ___; slip op at 5. Consequently, defendant failed to establish an error. *Carines*, 460 Mich at 763.

Affirmed.

/s/ Sima G. Patel
/s/ Brock A. Swartzle
/s/ Philip P. Mariani